David E. STERNBERG, Plaintiff,

v.

SECRETARY, Department of Health and Human Services, Defendant.

No CIV 00–3201–KHV.
No CRIM 97–20014–01–KHV.

United States District Court,
D. Kansas.

April 11, 2001.

David E. Sternberg, Leavenworth, KS, pro se.

John Jenab, Jenab & Kuchar, Olathe, KS, for plaintiff.

Tanya J. Treadway, Office of United States Attorney, Topeka, KS, Warren E. Brown, Office of Inspector General Dept. of Health & Human Services, Sean R. McKenna, Office of Counsel, Department of HHS, Washington, DC, for defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on plaintiff's Petition For Review (Doc. # 1) filed May 30, 2000. For reasons stated

below, the Court overrules plaintiff's petition.

### Factual Background

On November 26, 1997, a jury convicted defendant of 13 counts of mail fraud, 20 counts of money laundering, and one count of interstate transportation in aid of racketeering.[1] On April 29, 1998, defendant and the government entered into a sentencing agreement. The agreement provided in part that

In return for the government's agreement to an offense level of 25, its withdrawal of its request for an abuse of a position of trust enhancement, and its agreement to request Judge Vratil to depart downward to an offense level of 25, the defendant agrees to:

(1) withdraw all post-trial motions;

(2) withdraw his legal objections to the Presentence Investigation Report;

(3) not appeal his convictions;

(4) not appeal his sentence, unless imposed illegally or unless the government appeals;

(5) not collaterally attack his convictions under 28 U.S.C. § 2255;

(6) not appeal his exclusion from CHAMPUS;

(7) not appeal his exclusion from Medicare;

(8) not appeal his exclusion from FEHBP;

(9) agree to the amount of restitution to be paid, as set forth in the revised Presentence Investigation Report ($926,940.43);

* * *

(13) on release from incarceration, move for reinstatement to the federal insurance programs (CHAMPUS, Medicare, FEHBP) and agree to:

(a) conditional reinstatement;

(b) any and all conditions imposed by the programs, including pre- or post-payment review;

(c) offset of monies that would be paid to him under these programs, in a percentage to be determined by the respective programs, until restitution to these victims is complete.

Administrative Record Before The Departmental Appeals Board ("A.R.")—Part Three (Doc. # 22) filed October 12, 2000 at 267–69. On May 4, 1998, the Court adopted the sentence proposed by the parties in their agreement and sentenced defendant to 60 months in prison.

On June 15, 1998, defendant voluntarily reported to prison. More than five months later, on November 30, 1998, the Department of Health and Human Service ("HHS") notified defendant that effective December 20, 1998, he would be excluded from participation in all federal health care programs for a minimum period of 15 years. See A.R.—Part Three (Doc. # 22) at 259. Plaintiff appealed the exclusion to the Civil Remedies Division of the Departmental Appeals Board for HHS.[2] He ar-

---

**1.** For the remainder of this order, the Court will refer to Mr. Sternberg as defendant because this civil action arises out of his criminal case.

**2.** On May 12, 1999, defendant also filed a motion pursuant to 28 U.S.C. § 2255 alleging that his counsel was ineffective. On September 8, 1999, the Court dismissed defendant's motion. See Memorandum And Order (Doc. # 182). The Court held that defendant had entered a sentencing agreement which pro-

hibited him from raising the issues he sought to raise in that motion. See *id.* Defendant asked the Court to reconsider. Once again, the Court overruled his motion. See Order (Doc. # 184) filed January 3, 2000. On February 21, 2001, the Tenth Circuit construed defendant's appeal as an implied application to file a second or successive motion under 28 U.S.C. § 2255 and overruled it. See *United States v. Sternberg,* 5 Fed.Appx. 806 (10th Cir.2001).

gued that the length of the exclusion was unreasonable. See A.R.—Part One (Doc. # 20) at 11–15. On September 28, 1999, an administrative law judge ("ALJ") sustained defendant's 15–year exclusion. See A.R.—Part One (Doc. # 20) at 1–10. On December 27, 1999, the Appellate Division of the Departmental Appeals Board notified plaintiff that it had declined review of the ALJ decision. See A.R.—Part Two (Doc. # 21) at 110–11. The decision of the ALJ therefore stands as the final decision of the Secretary of HHS. See 42 C.F.R. § 1005.21(j).

**Analysis**

The ALJ ruled that a 15–year exclusion is reasonable and appropriate. See A.R.—Part One (Doc. # 20) at 10. The ALJ also rejected defendant's argument that under the sentencing agreement, the period of exclusion should coincide with his period of incarceration. See *id.* Defendant appeals, arguing that the 15–year exclusion violates the terms of the sentencing agreement.

■ Agreements between the government and criminal defendants are generally enforceable. See *United States v. Hernandez,* 134 F.3d 1435, 1437 (10th Cir. 1998). Because courts do not routinely address interpretation of sentencing agreements, courts generally construe such agreements with reference to principles of interpretation regarding plea agreements. See *United States v. Ross,* 245 F.3d 577, 582 (6th Cir.2001); *United States v. Bradstreet,* 207 F.3d 76, 80 n. 2 (1st Cir.2000). For a plea bargain, the Court applies a two-step process in interpreting its terms: "first, the court examines the nature of the government's promise; second, the court investigates this promise based upon the defendant's reasonable understanding at the time the guilty plea was entered." *United States v. Rockwell Int'l Corp.,* 124 F.3d 1194, 1199 (10th Cir.1997) (citing *Cunningham v. Diesslin,* 92 F.3d 1054,

1059 (10th Cir.1996)). The Court "will not allow the government to resort to a rigidly literal construction of the language of the plea agreement" to frustrate defendant's reasonable expectations. *United States v. Shorteeth,* 887 F.2d 253, 256 (10th Cir. 1989). General contract principles govern the Court's analysis of plea bargains and if any ambiguities are present, the Court resolves them against the drafter. See *United States v. Hawley,* 93 F.3d 682, 690 (10th Cir.1996). "Consistent with the contract law-based analysis that governs plea agreement disputes, the party who asserts a breach of a plea agreement has the burden of proving the underlying facts that establish a breach by a preponderance of the evidence." *Allen v. Hadden,* 57 F.3d 1529, 1534 (10th Cir.), *cert. denied,* 516 U.S. 1000, 116 S.Ct. 544, 133 L.Ed.2d 447 (1995). Whether a written agreement is ambiguous and whether government conduct violates the agreement are questions of law. See *United States v. Harvey,* 791 F.2d 294, 300 (4th Cir.1986); *Hawley,* 93 F.3d at 690.

■ "To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." *Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.,* 248 Kan. 657, 659, 810 P.2d 283, 285 (1991). When an agreement is not ambiguous, the Court may not make another contract for the parties. Its function is to enforce the contract as written. See *Patrons Mut. Ins. Ass'n v. Harmon,* 240 Kan. 707, 713, 732 P.2d 741 (1987). The Fourth Circuit has explained:

Neither side should be able, any more than would be private contracting parties, unilaterally to renege or seek modification simply because of uninduced mistake or change of mind. Such an approach is conformable not only to the

policies reflected in private contract law from which it is directly borrowed, but also to constitutional concerns of fundamental fairness in "bargaining" for [sentencing concessions], and to the wider concerns expressed in the exercise of supervisory jurisdiction over the administration of federal criminal justice.

*Harvey,* 791 F.2d at 300 (citations omitted).

Defendant argues that under the sentencing agreement, his term of exclusion from federal health insurance programs should be the same as his term of incarceration. See Plaintiff's Memorandum In Support Of Petition For Review Of Agency Decision (Doc. # 25) filed December 15, 2000 at 6,9; see also A.R.—Part One (Doc. # 20) at 61 ("By imposing a period of exclusion longer than the period of incarceration, the government will have breached the sentencing agreement."). The Court disagrees.

Initially the Court rejects defendant's argument because the sentencing agreement does not specify any term of exclusion—it states only that defendant will not appeal his exclusion. See A.R.—Part Three (Doc. # 22) at 267, ¶¶ 6–8. If defendant desired a specific term of exclusion, he should have asked for it. See *Rockwell,* 124 F.3d at 1199 (government's obligations do not issue from mere silence); *United States v. Furman,* 112 F.3d 435, 439 (10th Cir.1997) ("We shall not impose duties on the government that are not an express or implied part of its agreement with the defendant."); *Cunningham,* 92 F.3d at 1059–60 (defendant's understanding not controlling because it was neither an explicit nor implicit part of agreement). Based on the sentencing agreement, defendant agreed to abide by whatever period of exclusion the HHS set, with no right of appeal. The fact that defendant agreed to move for reinstatement on release from incarceration does not imply that the period of exclusion would terminate immediately on his release from incarceration.

Also, defendant's reading of the sentencing agreement does not account for good time credit he may accrue in prison. Pursuant to 18 U.S.C. § 3624, defendant is eligible to receive approximately eight months of good time credit, which would reduce his term of incarceration from 60 months to approximately 52 months. In contrast, defendant's period of exclusion from federal health insurance programs is subject to a mandatory minimum of 60 months. See 42 U.S.C. § 1320a–7(a)(1). Nothing in the sentencing agreement suggests that the government and the defendant assumed that he would be unable to receive good time credit. Although defendant may not ultimately receive the maximum amount of good time credit, the record reflected a strong possibility, at the time the sentencing agreement was executed, that he would receive at least some reduction in his term of incarceration. This fact suggests that the parties did not agree or assume that his term of incarceration would be identical to his term of exclusion. Indeed, defendant concedes that while his period of exclusion is "not less than five years," his term of incarceration "will be less than five years." Motion To Alter Or Amend Judgment (Doc. # 183) filed September 29, 1999 at 13; see A.R.—Part One (Doc. # 20) at 61.

At least two other factors counsel against defendant's contention that under the sentencing agreement, the terms of exclusion and incarceration are identical. First, defendant relies on the faulty premise that at the time of the sentencing agreement, he and the government understood that HHS would issue a decision on his period of exclusion on the very day that he arrived at prison—or that HHS would make his exclusion retroactive to the date of his arrival at prison. Although such an

agreement would have been permissible, nothing in the sentencing agreement suggests that it was the parties' agreement in this case. The Court notes that HHS issued its decision on November 30, 1998, with an effective date of December 20, 1998, over six months after defendant reported to prison. Defendant did not ask HHS to start the exclusion period on the first day of his prison term, and the government did not do so. These facts support the conclusion that the parties never agreed to such a term. Second, the fallacy of defendant's argument is illustrated by the fact that at the time of the sentencing agreement, the parties did not know the date of defendant's voluntary surrender or whether the Court would even permit voluntary surrender.

Defendant argues that paragraph 13 of the sentencing agreement, which requires defendant to move for reinstatement on his release from prison, imposes an affirmative obligation on HHS to conform his period of exclusion with his term of incarceration. The Court disagrees. First, paragraph 13 is included under defendant's obligations in the agreement. The government may have an obligation to not hinder or interfere with defendant's performance, but it does not have to ensure that HHS immediately acts on or approves defendant's application for reinstatement. Defendant's obligation under paragraph 13 is to "move" for reinstatement, not to obtain reinstatement or to obtain a ruling from HHS within a specified time period. Second, paragraph 13 cannot be read to require a specific term of exclusion in light of paragraphs six, seven and eight. Paragraphs six through eight of the agreement provide that defendant agrees to not ap-

peal his exclusion from the federal insurance programs (CHAMPUS, Medicare and FEHBP). If paragraph 13 provided that the period of exclusion would coincide with the term of incarceration, paragraphs six, seven and eight would have been unnecessary. Defendant obviously could not practice medicine while he was incarcerated and he therefore would have absolutely no reason to appeal any exclusion which was effective only while he was incarcerated. Moreover, paragraphs six through eight illustrate that at the time of the agreement, neither the government nor defendant knew the precise term of any exclusion (except that the minimum mandatory exclusion was five years). To give paragraphs six, seven and eight their intended meaning, the Court cannot construe paragraph 13 as providing that the defendant's period of exclusion will be identical to his term of incarceration. See *United States v. Brye*, 146 F.3d 1207, 1211 (10th Cir. 1998) (court should attempt to interpret plea agreement to give meaning to all of its terms); see also *New Valley Corp. v. United States*, 119 F.3d 1576, 1580 (Fed. Cir.1997) (interpretation that gives reasonable meaning to all parts of contract is preferred to one which leaves portion of contract inoperative, void, meaningless or superfluous); *Akandas, Inc. v. Klippel*, 250 Kan. 458, 464–65, 827 P.2d 37, 44 (1992) (court must consider all pertinent provisions, rather than critically analyze single or isolated provision; reasonable rather than unreasonable interpretations are favored).

For all of these reasons, the Court concludes that defendant did not have a reasonable expectation, based on the sentencing agreement, that his term of exclusion would end immediately upon his release from prison.[3]

---

**3.** Based on the Court's ruling, it need not address the government's alternative argument that the U.S. Attorney could not bind the Department of HHS in the sentencing agreement.

In addition, the Court notes that even if the government had an obligation to "consider" defendant for reinstatement upon his release from incarceration, he would not be entitled to any relief if he breached the

IT IS THEREFORE ORDERED that plaintiff's Petition For Review (Doc. # 1) filed May 30, 2000 be and hereby is **OVERRULED.** The HHS decision to exclude defendant from federal insurance programs for a period of 15 years is **AFFIRMED.**

terms of the sentencing agreement. See *United States v. Wells,* 211 F.3d 988, 995 (6th Cir.2000) (defendant who breaches plea agreement forfeits any right to its enforcement); *United States v. Merritt,* 988 F.2d 1298, 1313 (2d Cir.1993) (same); *United States v. Reardon,* 787 F.2d 512, 516 (10th Cir.1986) (same). Paragraphs six, seven and eight of the agreement arguably prohibit defendant's administrative and judicial appeals of the term of his exclusion from the federal insurance programs.